[No. 26179.   *En Banc.*   August 31, 1961.]

THE STATE OF WASHINGTON, *Respondent,* v. TOM ESKRIDGE, *Appellant.**

*LaVena Scarpelli* and *Willard J. Roe,* for appellant.

*John J. Lally, Howard A. Anderson,* and *Edward J. Parry,* for respondent.

DONWORTH, J.—The history of appellant's prosecution and conviction of murder in the first degree is long and, from a procedural standpoint, is quite involved. We shall endeavor to state in chronological order the principal court proceedings which have preceded the present status of the appeal now before us.

November, 1935—Appellant was tried in the superior court of Spokane county for the murder of Harry J. Phillips. He was represented by court-appointed counsel.

November 13, 1935—Appellant was convicted of murder in the first degree but the jury found that the death penalty should not be imposed.

November 29, 1935—Appellant's motions for a new trial and in arrest of judgment were heard and denied. (Appellant then discharged his counsel.)

December 14, 1935—Appellant was sentenced to a life term in the state penitentiary. Appellant thereupon gave oral notice of appeal to this court.

*Reported in 364 P. (2d) 813.

December 30, 1935—Appellant wrote a letter to the trial judge requesting that a transcript of his trial proceedings be furnished at county expense because of his indigency and because of his desire to prosecute his appeal. He then had no attorney representing him.

January 7, 1936—Appellant (then confined in the penitentiary) wrote to the trial judge (in reply to the judge's letter) stating that he had no funds and requesting that the court fix a date for the hearing on his aforesaid application, and that the court also order that he be returned to Spokane to represent himself. The judge wrote appellant that he could present an affidavit, but that his presence was not needed at the hearing.

January 20, 1936—A hearing was held on affidavit of appellant and counter-affidavits presented by the state. Appellant's motion was denied by an order stating that, in the court's opinion, appellant had been accorded a fair and impartial trial and no grave or prejudicial errors had occurred therein.

February 14, 1936—Appellant petitioned for a writ of mandate to be issued by this court directing the trial court to have a transcript furnished to appellant to enable him to prosecute his appeal.

April 15, 1936—The state moved that appellant's appeal be dismissed for failure to prosecute the same in not filing a certified statement of facts, a transcript of record, and appellant's brief within the time prescribed by statute and the applicable rules of this court.

April 24, 1936—Both the petition for mandamus and the state's motion to dismiss the appeal were heard. By docket entry, appellant's petition was denied and the state's motion was granted. Appropriate judgments were entered accordingly on May 27, 1936.

During the next twenty years, no further legal proceedings were had.

July 25, 1956—Appellant filed in this court a petition for a writ of habeas corpus (in *forma pauperis*). The superintendent of the state penitentiary, in his answer, denied most of the allegations of the petition.

September 21, 1956—The matter was heard by this court and appellant's petition was denied without opinion.

October 24, 1956—A rehearing of this matter was denied.

April 1, 1957 — Appellant's petition for certiorari was granted by the United States Supreme Court.

May 19, 1958—The cause was argued in that court, appellant being represented by court-appointed counsel.

June 16, 1958—A *per curiam* decision was filed, in which our dismissal of appellant's petition for a writ of habeas corpus was reversed and the cause remanded to this court for further proceedings consistent therewith. *Eskridge v. Washington State Board of Prison Terms & Paroles,* 357 U. S. 214, 2 L. Ed. (2d) 1269, 78 S. Ct. 1061. (The board was substituted for the superintendent as respondent in the case.)

August 6, 1958—Pursuant to the mandate received from the United States Supreme Court, this court entered its order reinstating appellant's appeal from the judgment and sentence of December 14, 1936.

By this order, this court also appointed John A. Gose of Walla Walla to represent appellant as his attorney in the prosecution of his appeal to this court.

We need not elaborate upon the difficulties experienced by appellant's several counsel in obtaining a transcript of the testimony and other trial proceedings. The trial judge had died since the trial. Hearings were had before each of two other judges regarding the certification of a statement of facts at each of which appellant was personally present and was represented by counsel. Finally, all the material trial proceedings were included in the statement of facts which was certified July 1, 1960, by one of the judges of the superior court (as provided by Rule on Appeal 37, RCW Vol. 0), except the exhibits, which could not be attached thereto because they had been lost.

On December 19, 1958, Mr. Gose, the counsel appointed by this court to assist appellant in the prosecution of his appeal, wrote to the chief justice asking permission to withdraw because of a difference of opinion between him and

appellant as to whether to proceed with his appeal or to petition the United States district court for a writ of habeas corpus on the ground that the statement of facts was inadequate because certain portions of the trial proceedings were then missing therefrom. This letter concluded as follows:

"Unfortunately, Mr. Eskridge disagrees with me. He wants to enter the United States District Court on a Writ of Habeas Corpus to contest the first point above referred to. I feel that Mr. Eskridge is honest and sincere in feeling this is the correct procedure, but I feel just as strongly that it is incorrect. Thus, we are in disagreement.

"Since Mr. Eskridge's liberty is at stake, I think that he should be free to follow the course he wants. However, I don't think that I should either have to take his case into the United States District Court, or be held responsible for his failure to perfect an appeal.

"When I saw Mr. Eskridge yesterday I informed him that since we were at an impasse as how to proceed and since he did not think appeal was the correct remedy, I had no alternative but to ask leave to withdraw.

"Under these circumstances, I would ask that the Court consider my request to withdraw as Mr. Eskridge's counsel."

On January 22, 1959, counsel again wrote to the chief justice regarding the difference of opinion between him and his client as to the further prosecution of his appeal. We quote this letter in full:

"I talked to Mr. Eskridge on Monday and related our telephone conversation of last Saturday. Mr. Eskridge was adamant in believing that a habeas corpus action is the way to handle his problem and he refused to proceed further with his appeal.

"I asked him if he wanted to talk to . . . [another attorney] about the problem, but he said that . . . [the other attorney] had turned down the case once and he now did not want me to call him. I also explained to him that under the court's order of August 6, 1958, I felt obligated to take an appeal for him if he wanted it, but he said that he did not want an appeal at this time, and he refused to have the judge sign the certification of the statement of facts. He wants to begin a habeas corpus action in Spokane County. For the reasons which I have explained at great length to him, I do not think this is the correct

procedure and I do not feel obligated to do this under the court order.

"I also told Mr. Eskridge that any time he wanted to continue with his appeal that I would be glad to handle the same for him, but as I stated before, I was not going to take a habeas corpus proceeding for him in Spokane County.

"I told Mr. Eskridge that I would immediately write you and inform you of the fact that he is not going to proceed with his appeal but is rather going to proceed by habeas corpus, and that I was not going to handle his habeas corpus for him in Spokane County unless the court so requested me. Mr. Eskridge asked me to inquire of you whether the court was going to appoint a lawyer for him to handle the habeas corpus proceeding in Spokane County. Whatever your answer to this question is, would you please so inform me that I may inform Mr. Eskridge and he may proceed accordingly.

"I have spent over sixty hours working on Mr. Eskridge's case, including research, reviewing the file, outlining my briefs and reviewing the statement of facts of some 439 pages several times. I have seen Mr. Eskridge approximately once a week for the last three months and have explained at great length the problems involved in his appeal and the reason for proceeding as we are. We had a hearing in Spokane to attempt to settle the Statement of Facts.

"I have been most diligent in trying to perfect Mr. Eskridge's appeal, and feel that the issues are now sharply in focus. Without going into the merits of the case, I feel that an appeal would be beneficial to him as his case raises four or five exceedingly clear questions. The appeal could easily be perfected by the certification of the proposed statement of facts, (including a statement by the Judge as to what is missing), and the filing of the briefs. Enclosed is a copy of my proposed Certification to which the Prosecuting Attorney of Spokane County has agreed. Though it would be unusual to raise the question of the adequacy of the appeal in an appeal, the Prosecuting Attorney has agreed it should be done in this case, or we will be involved in a never ending legal battle.

"Although I have explained to Mr. Eskridge at great length that we will include the two basic questions—1. Adequacy of Appeal, and 2. Alleged trial errors in his case, in the appeal he will not permit me to perfect the appeal. He feels that bringing a habeas corpus action is the correct procedure. I have been most unsuccessful in convincing

him we are proceeding correctly, but feel that I cannot compromise my thoughts on the matter and adequately protect Mr. Eskridge.

"I would be most happy to handle Mr. Eskridge's appeal when and if he decides that it is correct. In the alternative if the Court decides to appoint another lawyer to handle Mr. Eskridge's habeas corpus, I will gladly turn over my file and cooperate with him by giving him the benefit of my research. I regret that we have reached this impasse, and I will do anything the Court would suggest to aid Mr. Eskridge."

Thereafter, according to Mr. Gose's report to the chief justice, appellant requested Mr. Gose several times to withdraw as counsel, but later in each instance asked him to resume his services.

On March 11, 1960, appellant signed a written request that Mr. Gose be allowed to withdraw as his attorney. Thus, after nineteen months of representation by Mr. Gose, appellant finally dispensed with his court-appointed counsel.

On March 18, 1960, the superior court of Spokane county appointed the firm of Roe and Scarpelli of Spokane to represent appellant in prosecuting his appeal to this court. They represented him in regard to the final certification of the statement of facts on July 1, 1960. They filed appellant's opening brief in this case on September 30, 1960, and also performed other professional services in this court on behalf of appellant, as stated in some detail later in this opinion.

On December 16, 1960, appellant *pro se* filed a petition for habeas corpus, which is the subject of our opinion in cause No. 35844.

On December 30, 1960, appellant *pro se* filed in this court his motion to dismiss his appeal herein. He also filed a brief in support of this motion. His motion begins as follows:

"Comes now Tom Eskridge, appellant-defendant in the above-entitled case, and moves this Court for an order dismissing the purported appeal now pending under the above entitled cause number, upon the ground and for the following reasons:   . . ."

The motion is based upon four grounds: (1) This court has no jurisdiction to hear his appeal because the appeal papers were not timely filed, (2) the court reporter's transcript of trial proceedings was neither full nor accurate, (3) the statement of facts was not certified by the proper court as required by law, and (4)

"The court-appointed counsel representing defendant on appeal failed to cite Insufficient Evidence as an assignment of error on appeal after being urgently advised to do so several times by said defendant."

We shall discuss the effect of this motion later in this opinion, but meanwhile will continue with our chronological narration of events.

On January 6, 1961, appellant wrote to Miss Scarpelli, in part:

"It is my intelligent desire that you and Roe *withdraw* from my case immediately."

On January 11, 1961, Miss Scarpelli wrote to the chief justice regarding appellant's request that they withdraw from his case, stating, in part:

"He has also filed a petition for habeas corpus without our consent or advise and of which we have no part.

"We are not asking to be excused, but the appeal, reply brief and argument is yet to be done. We do not wish to appear without authority as an attorney for a client.

"Since it is our impression that the Supreme Court and Superior Court are desirous of having the appeal prosecuted, we do not feel we can or should withdraw or consider ourselves unretained without court authority.

"By this letter we ask guidance of the Supreme Court of the State of Washington as to whether we can and should represent Mr. Eskridge on the remaining matters touching this appeal."

On January 16, 1961, the chief justice replied (sending a copy to appellant), in part:

"The Supreme Court of the United States has ordered and directed that an appeal be granted to Thomas Eskridge in the above indicated case. The Supreme Court of the State of Washington proposes to carry out this order and direction as fully and completely as is reasonably possible. You and

Mr. Willard Roe of Spokane have been appointed and have agreed to prepare and present the appeal in this case. I, as the Chief Justice, and the members of this Court have complete confidence in the personal integrity and professional competence of you and your associate, Mr. Roe, to proceed in this matter with reasonable dispatch. This is to authorize and suggest that you do just that. Any objections that appellant Eskridge may have will be filed, noted and considered in connection with the final disposition of this matter.

"The members of this Court appreciate the time, effort and work that has been and will be devoted to this matter by you and your associate counsel. Appellant Eskridge may supplement your efforts in his behalf in any reasonable manner he may care to undertake. You are authorized to so advise him, and that his appeal in this matter will, in accordance herewith, proceed as expeditiously as possible."

(At this time appellant's appeal had been set for hearing before this court on March 24, 1961.)

On February 17, 1961, appellant wrote to the chief justice stating that he had been released from the penitentiary on parole on February 15, 1961, to serve as a life parolee working on a ranch situated near Prescott, Washington, which is about thirty-five miles from Walla Walla.[1]

After the state's brief in the present case was filed, appellant's counsel prepared and filed a reply brief on his behalf.

March 24, 1961, appellant's appeal came on for hearing before this court sitting *en banc* and was argued orally by Mr. Roe and Miss Scarpelli on appellant's behalf and by a deputy prosecuting attorney of Spokane county on behalf of the state. All appellant's assignments of error were fully discussed by counsel and considered by the court.

Appellant did not appear in person.

At the hearing the court asked appellant's counsel concerning their authority to appear in his behalf in view of his motion to dismiss his appeal and his letter of January 6, 1961, to Miss Scarpelli expressing his "intelligent desire" that she and Mr. Roe "withdraw from my case imme-

[1] In this letter, appellant requested that the chief justice and a former chief justice each disqualify himself on the hearing of his petition for a writ of habeas corpus.

diately." In answer to such questions from the court, Mr. Roe frankly stated that there had been a very definite indication to counsel that appellant did not want them to represent him at the hearing, but counsel conceived it to be their duty to present arguments in his behalf in order that he be given a full legal hearing according to due process of law under the mandate of the United States Supreme Court directed to this court. Otherwise, no oral argument would be made and the court would not have the benefit thereof.

After considering all phases of this protracted appellate proceeding, we are of the opinion that the mandate of the United States Supreme Court has been complied with by appellant's being furnished, at public expense, with an adequate statement of facts and transcript of record, and also by the court's furnishing him with competent counsel to assist him in prosecuting this appeal.[2] He has been afforded as adequate appellate review as defendants who are financially able to buy transcripts and employ counsel. Therefore, his constitutional right of appeal has been fully afforded him without cost.

■ However, we cannot pass on the merits of his appeal by reason of the fact that appellant has voluntarily moved to dismiss his appeal. He has done so after much deliberation and despite the advice of his attorneys, which was to the contrary. The grounds stated in his motion are immaterial. He has a right to abandon his appeal. No reason appearing why this motion should not be granted, but, on the contrary, this court being of the opinion that under the circumstances of this case the dismissal of appellant's appeal must be granted, we have no alternative but to order it dismissed. *Cf. Jones v. State,* 69 Okla. Crim. 356, 103 P. (2d) 951 (1940), and *Huber v. State,* 13 Okla. Crim. 209,

---

[2]The United States Supreme Court has not passed upon the specific question whether it is lack of due process under the fourteenth amendment for a state to fail to furnish counsel to an indigent appellant in the prosecution of his appeal in a criminal case. See *Newsom v. Smyth,* 365 U. S. 604, 5 L. Ed. (2d) 803, 81 S. Ct. 774.

163 Pac. 329 (1917). Accordingly, it is hereby dismissed.

Whether appellant's action in the premises is wise or unwise is not for us to decide. We have followed the mandate of the United States Supreme Court to the letter and afforded appellant every right available to one appealing from a criminal conviction in this state. In the face of his motion to dismiss his appeal, we have no right to pass upon the merits thereof.

The pending appeal from the judgment and sentence of December 14, 1935, is hereby dismissed on appellant's own motion to dismiss it filed herein *pro se* on December 30, 1960.

Since appellant insists on having his appeal dismissed, and we hold that it should be dismissed, we are of the opinion that the dismissal of his appeal should be effective immediately, and consequently our remittitur shall go down forthwith.

It is so ordered.

ALL CONCUR.